**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

| | | |
|---|---|---|
| IN RE: | : | |
| | : | Chapter 11 Case No. 16-20030-JSD |
| SANDALWOOD HOSPITALITY, LLC, | : | |
| | : | |
| Debtor. | : | |

# DISCLOSURE STATEMENT FOR
## PLAN OF REORGANIZATION OF SANDALWOOD HOSPITALITY, LLC
## <u>DATED APRIL 18, 2016</u>

David L. Bury, Jr.
G. Daniel Taylor
Stone & Baxter, LLP
Suite 800, 577 Mulberry Street
Macon, Georgia 31201
Counsel to Debtor and Debtor-in-Possession

## TABLE OF CONTENTS

I.    Introduction...................................................................................................................2

II.   Voting Procedures and Requirements.....................................................................3

III.  The Company.............................................................................................................6

IV.   Debtor's Chapter 11 Case.........................................................................................7

V.    Summary of the Plan...............................................................................................11

VI.   Financial Information .............................................................................................31

VII.  Acceptance and Confirmation ...............................................................................31

VIII. Feasibility of the Plan ............................................................................................33

IX.   Certain Tax Consequences .....................................................................................33

X.    Alternatives to Confirmation and Consummation of the Plan............................36

XI.   Solicitation……………………………………………………………………..33

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

| | |
|---|---|
| IN RE: | : |
| | :   Chapter 11 Case No. 16-20030-JSD |
| SANDALWOOD HOSPITALITY, LLC, | : |
| | : |
| Debtor. | : |

**DISCLOSURE STATEMENT FOR**
**PLAN OF REORGANIZATION OF SANDALWOOD HOSPITALITY, LLC**
**<u>DATED APRIL 18, 2O16</u>**

David L. Bury, Jr.
G. Daniel Taylor
Stone & Baxter, LLP
Suite 800, 577 Mulberry Street
Macon, Georgia 31201
Counsel to Debtor and Debtor-in-Possession

## <u>NOTICE</u>

THIS DISCLOSURE STATEMENT (THE "<u>DISCLOSURE STATEMENT</u>") IS THE ONLY DOCUMENT AUTHORIZED BY THE COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES ACCEPTING OR REJECTING THE PLAN OF REORGANIZATION OF SANDALWOOD HOSPITALITY, LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, DATED APRIL 18, 2016 (AS IT MAY BE FURTHER AMENDED, THE "<u>PLAN</u>"), A COPY OF WHICH PLAN IS ATTACHED TO THIS DISCLOSURE STATEMENT AS **EXHIBIT A**.  NO REPRESENTATIONS HAVE BEEN AUTHORIZED BY THE COURT CONCERNING THE COMPANY OR THE PLAN, EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT.

THIS DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN, AND IS NOT INTENDED TO REPLACE CAREFUL AND DETAILED REVIEW AND ANALYSIS OF THE PLAN, BUT TO AID AND SUPPLEMENT SUCH REVIEW. THIS DISCLOSURE STATEMENT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE MORE DETAILED PROVISIONS SET FORTH IN THE PLAN.  **ALL CAPITALIZED TERMS CONTAINED IN THIS DISCLOSURE STATEMENT HAVE THE MEANING ASSIGNED IN THE ACCOMPANYING PLAN.  IN THE EVENT OF A CONFLICT BETWEEN THE PLAN AND DISCLOSURE STATEMENT, THE PROVISIONS OF THE PLAN WILL GOVERN.**  ALL HOLDERS OF CLAIMS ARE ENCOURAGED TO REVIEW THE FULL TEXT OF THE PLAN AND TO READ CAREFULLY THIS ENTIRE DISCLOSURE STATEMENT BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN.

THIS DISCLOSURE STATEMENT SUMMARIZES CERTAIN PROVISIONS OF THE PLAN, STATUTORY PROVISIONS, DOCUMENTS RELATED TO THE PLAN, EVENTS IN SANDALWOOD HOSPITALITY'S, LLC'S CHAPTER 11 CASE, AND FINANCIAL INFORMATION.  ALTHOUGH DEBTOR BELIEVES THAT THE PLAN AND RELATED DOCUMENT SUMMARIES ARE FAIR AND ACCURATE, SUCH SUMMARIES ARE QUALIFIED TO THE EXTENT THEY DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS.  FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED BY MANAGEMENT, EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED.  DEBTOR CANNOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN, INCLUDING THE FINANCIAL INFORMATION, IS WITHOUT INACCURACY OR OMISSION.  IN THE EVENT OF ANY INCONSISTENCY BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN, THE PROVISIONS OF THE PLAN WILL CONTROL.  THIS DISCLOSURE STATEMENT INCORPORATES AND IS GOVERNED BY DEFINITIONS THAT ARE INCLUDED IN THE PLAN.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF, EXCEPT TO THE EXTENT AN EARLIER DATE IS SPECIFIED WITH RESPECT TO ANY INFORMATION, AND THE DELIVERY OF THIS DISCLOSURE STATEMENT DOES NOT IMPLY THAT THE INFORMATION

CONTAINED HEREIN IS CORRECT AT ANY TIME SUBSEQUENT TO THE DATE HEREOF OR THEREOF.

NO PERSON WILL CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE. EACH PERSON SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL, OR TAX ADVISORS AS TO ANY SUCH MATTERS.

THE DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION NOR HAS THE SECURITIES AND EXCHANGE COMMISSION PASSED UPON OR IS THE SECURITIES AND EXCHANGE COMMISSION REQUIRED TO PASS UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT WILL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT, LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

THE APPROVAL BY THE BANKRUPTCY COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE A FINDING BY THE COURT THAT THE REPRESENTATIONS CONTAINED HEREIN ARE FACTUAL, NOR DOES SUCH APPROVAL CONSTITUTE AN ENDORSEMENT OF ANY OF THE REPRESENTATIONS CONTAINED IN EITHER THIS DISCLOSURE STATEMENT OR IN THE ATTACHED PLAN.

THE PLAN WILL NOT BE BINDING ON CREDITORS UNLESS IT IS CONFIRMED BY THE BANKRUPTCY COURT AT THE CONFIRMATION HEARING FOR THE DEBTOR'S PLAN, WHICH WILL BE HELD ON AT A DATE, TIME, AND PLACE SPECIFIED ON THE ACCOMPANYING NOTICE AND ORDER.


## I.    **INTRODUCTION**

On January 18, 2016, Sandalwood Hospitality, LLC (the "Debtor", "Sandalwood", or the "Company"), Debtor and Debtor-in-Possession in the above-referenced bankruptcy case, filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code. Debtor submits this Disclosure Statement pursuant to Section 1125 of the Bankruptcy Code in connection with the solicitation of acceptances of its Plan of Reorganization of Sandalwood Hospitality, LLC dated April 18, 2016  (the "Plan"), a copy of which is attached on **Exhibit A**.

In summary, Sandalwood seeks to continue operations of its business and pay Allowed Claims in its Bankruptcy Case as proposed in the Plan pursuant to the terms of the Plan. Sandalwood will continue as a separate legal entity and retain ownership of its assets, with Holders of Equity Interests in Sandalwood retaining their interests under the Plan.  Management of Sandalwood will continue in place following confirmation. Liens securing the payment of

each Allowed Secured Claim will remain intact.

The projected income and expenses of the Debtor are shown on **Exhibit D**, attached to this Disclosure Statement.  Funds required for implementation of the Plan and distributions under the Plan shall be provided from the regular operation of the Debtor's properties as projected in the Budget.  Debtor believes that confirmation of the Plan will be more economical and efficient than a liquidation under Chapter 7 of the Bankruptcy Code because of, among other things, the highly-discounted value that would be obtained for Debtor's property if it were sold in a quick sale by a Chapter 7 trustee and the increased costs and expenses of a liquidation under Chapter 7 would result in some creditors not being paid in full,  in some creditors not being paid at all, and in the elimination of Equity Interests.

Debtor believes that its Plan is feasible and that its Confirmation (approval) by the Bankruptcy Court is in the best interests of all Parties-in-Interest.  No alternative will result in payment of Allowed Claims in full.  Therefore, Sandalwood urges acceptance of the Plan.

A.      **The Disclosure Statement.**

The purpose of this Disclosure Statement is to set forth information that (i) outlines the history of the Debtor, its business, and the reasons that Debtor was forced to file this Case, (ii) summarizes the Plan, and (iii) is intended to assist each holder of any Claim against, or Equity Interest in, the Debtor entitled to vote for acceptance or rejection of the Plan to make an informed decision of whether to vote to accept or reject the Plan.  No solicitation for votes on the Plan may be made except pursuant to this Disclosure Statement and the attached Solicitation Letter, and no person has been authorized to utilize any other information concerning the Company or their businesses for such purpose.

This Disclosure Statement does not purport to be a complete description of the Plan, the financial status of the Debtor, the applicable provisions of the Bankruptcy Code, or of other matters that may be deemed significant by Creditors, interest-holders, or other parties-in-interest. The Disclosure Statement necessarily involves a series of compromises between extensive "raw data" and the legal language in documents or statutes on the one hand and considerations of readability and usefulness on the other.  For further information, you should examine the Plan directly and consult your legal, financial, and tax advisors.

B.      **Bankruptcy Court Approval of this Disclosure Statement.**

After notice and a hearing, the Bankruptcy Court approved this Disclosure Statement as containing adequate information of a kind and in sufficient detail to enable each Holder of a Claim against or Interest in the Debtor to make an informed judgment as to whether to vote to accept or reject the Plan.

## II.  VOTING PROCEDURES AND REQUIREMENTS

A.      **Eligibility to Vote**

Debtor is soliciting acceptances of the Plan from each Class of Creditors identified in the Plan as an impaired class that is not deemed to have rejected the Plan.  "Unclassified Claims,"

3

identified below, are unimpaired, and are therefore deemed to have accepted the Plan. Such parties will not vote. Specifically, only the holders of Allowed Claims in those classes specified below and further specified in the Plan (the "Voting Classes") are eligible to vote to accept or reject the Plan. The manner in which ballots will be tabulated for Confirmation purposes is more particularly described below. Classes in which no vote is cast will be deemed to have accepted the Plan.

This Disclosure Statement and the accompanying Plan are being sent to all holders of Unclassified Claims, Creditors, and Equity Interest holders, whether or not entitled to vote. Under Section 1141 of the Bankruptcy Code, the Plan, if approved ("confirmed") by the Bankruptcy Court, will bind each party receiving this Disclosure Statement and Plan, whether or not such party is entitled to vote for or against the Plan, and whether or not such party files a ballot.

**B.     Ballots and Voting Deadlines.**

**1.     Ballots.**

Holders of Claims entitled to vote on the Plan will receive a Ballot accompanying this Disclosure Statement. All votes must be cast by using the Ballot enclosed with this Disclosure Statement (or manually executed copies thereof). No other votes will be counted.

Please fill out the Ballot and return it to the Bankruptcy Court at the address listed below:

> Clerk, United States Bankruptcy Court
> 801 Gloucester St, Third Floor
> Brunswick, Georgia 31520

DO NOT RETURN ANY SECURITIES, NOTES, OR PROOFS OF CLAIM WITH YOUR BALLOT. The amount of your Claim for purposes of voting will be the amount shown upon any Proof of Claim filed by you in connection with the Bankruptcy Case, or if you did not file a Proof of Claim, by the amount shown as being owed on the Schedules of Assets and Liabilities filed by the Debtor in its individual Bankruptcy Case. If an objection to a Claim is filed before Confirmation of the Plan, then the amount of the Claim for voting purposes will be determined by the Court.

If you mail your Ballot, then enough time should be allowed to ensure timely delivery to and actual receipt by the Bankruptcy Court by the Voting Deadline.

**AS PROVIDED IN THE ATTACHED ORDER OF THE BANKRUPTCY COURT APPROVING THE FORM AND CONTENT OF THIS DISCLOSURE STATEMENT, IN ORDER TO BE COUNTED, BALLOTS MUST BE COMPLETED, SIGNED, AND ACTUALLY RECEIVED IN PROPER FORM BY THE BANKRUPTCY COURT AT THE ABOVE ADDRESS ON OR BEFORE THE DATE SET IN THE ATTACHED ORDER (THE "VOTING DEADLINE"), OR SUCH LATER DATE TO WHICH THIS SOLICITATION IS EXTENDED BY THE DEBTOR OR THE COURT. BALLOTS RECEIVED AFTER THIS TIME MAY NOT BE COUNTED IN THE VOTING UNLESS**

**THE COURT SO ORDERS. IF YOU HAVE ANY QUESTIONS ABOUT PROCEDURES FOR VOTING, OR IF YOU DID NOT RECEIVE A BALLOT, RECEIVED A DAMAGED BALLOT, HAVE LOST YOUR BALLOT, OR HAVE ANY QUESTIONS ABOUT THE PLAN OR DISCLOSURE STATEMENT, PLEASE CALL COUNSEL FOR THE DEBTOR AS SET FORTH ON THE COVER PAGE OF THIS DOCUMENT.**

If a Ballot is signed by a trustee, executor, administrator, guardian, attorney, officer of a corporation, or others acting in a fiduciary or representative capacity, then such persons should indicate their authority in the space provided on the Ballot.

    2.      **Revocation of Ballots.**

As provided by Bankruptcy Rule 3018(a), for cause shown, the Court, after notice and a hearing, may permit a creditor or equity security holder to change or withdraw an acceptance or rejection of the Plan, or may temporarily allow the claim or interest for purposes of voting, notwithstanding an objection to such claim or interest.

    3.      **Voting Multiple Claims.**

Persons holding Claims in more than one Class must vote each Claim separately.

    4.      **Incomplete Ballots.**

Any Ballot received which is unsigned or does not indicate either an acceptance or a rejection of the Plan will not be counted. Incomplete ballots may be amended by the holder of the Claim on account of which the Ballot is cast to cure the deficiency, provided the amendment is filed before the beginning of the hearing on confirmation of the Plan.

    5.      **Waivers of Defects, Irregularities, Etc.**

Unless otherwise directed by the Bankruptcy Court, all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of Ballots will be determined by the Bankruptcy Court, which determination will be final and binding. The Debtor reserves the absolute right to contest the validity of any revocation or withdrawal. The Debtor also reserves the right to request the Bankruptcy Court to reject any and all Ballots not in proper form. The Debtor further reserves the right to request the Bankruptcy Court to waive any defects or irregularities or conditions of delivery as to any particular Ballot. The Bankruptcy Court's interpretation (including its interpretation of the Ballot and the respective instructions thereto), will be final and binding on all parties. Unless waived, any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Bankruptcy Court determines. Neither the Debtor nor any other person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor will any of them incur any liability for failure to provide such notification. The Debtor will provide copies of any contested ballots to the United States Trustee contemporaneously with the filing of the Balloting Report with the Court.

### C.     Confirmation Hearing.

The Confirmation Hearing will be held on a date and time set by the Honorable John S. Dalis, United States Bankruptcy Judge, in the Courtroom of the United States Bankruptcy Court for the Southern District of Georgia, Brunswick Division, Third Floor, 801 Gloucester Street, Brunswick, Georgia 31520.  Such Confirmation Hearing may be adjourned from time to time by additional notice prior the hearing or by announcement in Bankruptcy Court.  At the Confirmation Hearing, the Bankruptcy Court will (i) determine whether the requisite votes have been obtained for the voting Classes, (ii) hear and determine objections, if any, to the Plan and to confirmation of the Plan that have not been previously disposed of, and (iii) determine whether to confirm the Plan. All objections, if any, to confirmation of the Plan must be filed with the Bankruptcy Court and served pursuant to the accompanying Order.

Objections to Confirmation of the Plan may be filed by any Creditor or party in interest, regardless of whether such Creditor or party in interest is entitled to vote on the Plan.

### D.     Recommendations.

**DEBTOR IS PROPOSING A PLAN THAT PROVIDES FOR PAYMENTS TO HOLDERS OF ALLOWED CLAIMS SUBSTANTIALLY IN EXCESS OF WHAT WOULD BE PAID TO CREDITORS IN A LIQUIDATION OF DEBTOR OR IN A CHAPTER 7 CASE.  DEBTOR BELIEVES THAT THE PLAN PROVIDES THE BEST AND MOST EFFICIENT APPROACH TO THE PAYMENT OF CLAIMS, THROUGH THE CONTINUING OPERATION OF THE DEBTOR'S BUSINESS, AND MAXIMIZES THE VALUE OF DEBTOR'S ASSETS FOR THE BENEFIT OF ITS CREDITORS AND EQUITY INTEREST HOLDERS.  THEREFORE, THE DEBTOR URGES CREDITORS TO VOTE TO ACCEPT THE PLAN.**

## III.   THE COMPANY

### A.     General Information

### 1.     Corporate Structure and Ownership.

Sandalwood Hospitality, LLC is a Georgia limited liability company.  Sandalwood is owned 99% by Chetan T. Patel, Sandalwood's managing-member, and 1% by Sandalwood Management, Inc., a corporation of which Chetan T. Patel is the sole shareholder.

### 2.     Overview of the Business of Sandalwood Hospitality, LLC.

In September 2005, Sandalwood Hospitality, LLC purchased a hotel in Darien, Georgia, for a recorded price of $2,975,000 (the "Hotel Property"). The Hotel Property is located immediately off Interstate 95, exit 49, at 12924 Highway 251, Darien, Georgia. The Hotel Property features an outdoor pool, guest laundry, business center, lobby, and breakfast area. Since purchasing the property Sandalwood has operated the hotel exclusively as a Comfort Inn.

In recent years, Sandalwood has experienced a significant decrease in room occupancy

and revenue. This downtown is largely the result of two recent events. First, the demand for rooms generated by the Federal Law Enforcement Training Center located in Brunswick, Georgia, has significantly diminished as a result of the construction of dormitory rooms on that facility's campus.  Second, the outlet mall located at Exit 49 has been in steady decline over the past five (5) years, has changed ownership on a number of occasions, and has current occupancy that is estimated to be below 20%. Accordingly, the revenue generated by the Hotel Property is only a fraction of what it was when Sandalwood purchased it in 2005.

> **3.      Overview of Assets and Liabilities of Sandalwood Hospitality, LLC.**

Sandalwood's assets and liabilities may be summarized as follows:

> **Assets**

Sandalwood has one primary asset: The Hotel Property, which is a Comfort Inn hotel located at 12924, McIntosh County, Darien, Georgia. In Debtor's estimation, and as listed on Debtor's Schedules, the Hotel Property, including the real and personal property located thereon, has a market value of $1,059,801.

Other than cash on hand, which fluctuates, as shown on Sandalwood's monthly reports and the attached Budget, in the ordinary course, Sandalwood has no other material assets.

> **Liabilities**

Sandalwood has two primary creditors: Quantum National Bank ("Quantum") and the Small Business Administration ("SBA").  Sandalwood's liability to Quantum is estimated to be $1,100,444.00.  The liability appears to be collateralized by a senior position in the Hotel Property. Sandalwood's liability to the SBA is estimated to be $887,339.00.  The liability appears to be collateralized by a junior position in the Hotel Property.

The Budget (attached hereto as **Exhibit D**) also projects, as of the Effective Date, various general unsecured trade liabilities and insider loans from Mr. Patel totaling $470,301.10.

> **4.      Reasons for Filing Bankruptcy.**

Sandalwood sought bankruptcy protection because, given the depressed market, particularly at the Darien where the Hotel Property is located, its operations are insufficient to satisfy its existing debt obligations and it desires to restructure its debts and reorganize Sandalwood Hospitality, LLC.

## IV.      DEBTOR'S CHAPTER 11 CASE

Sandalwood's bankruptcy case is a reorganization case under Chapter 11 of Bankruptcy Code.  Sandalwood has continued to operate its business and manage its property as a Debtor and Debtor-in-possession as authorized under Sections 1107(a) and 1108 of the Bankruptcy Code.

### A.  Significant "First Day" Bankruptcy Orders.

At the outset of the Chapter 11 Case, Debtor filed motions with the Bankruptcy Court seeking both procedural and substantive relief.  Those motions are described below.

### 1.  Retention of Professionals; Compensation Procedures.

Debtor filed several motions to employ professionals, including motions to employ Stone & Baxter, LLP as its bankruptcy counsel. Specifically, the Bankruptcy Court entered an order authorizing Debtor to retain Stone & Baxter, LLP's Ward Stone, Jr. (Dkt. 19), David L. Bury, Jr. (Dkt. 18), and G. Daniel Taylor (Dkt. 69).

On Debtor's motion, the Bankruptcy Court also entered an order establishing compensation procedures for professionals. (Dkt. 50).  Under the compensation procedures, fees and expenses of Debtor's professionals may be provisionally paid on a monthly basis, subject objection by creditors and final Bankruptcy Court approval.

### 2.  Cash Collateral.

The Bankruptcy Court entered the first Interim Cash Collateral Order on January 28, 2016 (Dkt. 40) following the January 22, 2016 preliminary hearing and a follow-up Interim Cash Collateral Order (after the February 11, 2016 follow-up hearing thereon) on March 28, 2016 (Dkt. 77). The Orders approved Debtor's use of cash collateral as to Quantum National Bank and the Small Business Administration through and including May 31, 2016.  Quantum and the SBA received notice of the interim hearings, participated in the interim hearings, and/or consented in writing to the relief requested by Debtor with respect to the use of cash collateral.

In pertinent part, the Orders provide for negotiated and/or Court-ordered adequate protection payments and provisions to those lenders in accordance with an extensive, attached budget (similar in format to the Budget attached hereto). They also provide that Debtor will maintain the lenders' collateral, escrow and pay post-petition *ad valorem* taxes on the collateral as such taxes become due, and maintain insurance on the collateral.

### B.  Significant Events During the Chapter 11 Case

### 1.  Filing of Schedules and Statements of Financial Affairs.

On February 17, 2016, Debtor filed its Schedules of Assets and Liabilities (the "Schedules") and Statement of Financial Affairs ("SOFA").  The Schedules and SOFA are of record in the office of the Clerk of the Bankruptcy Court and are available for inspection on line and at the Clerk's Office.

The Schedules, filed under oath, list all known assets and liabilities of Debtor as of the Petition Date.  The manner in which Claims against Debtor are listed in the Schedules is important.  Under Section 1111(a) of the Bankruptcy Code, a Proof of Claim or Interest is deemed filed for any claim or interest that appears in the Schedules, except a claim or interest that is scheduled as disputed, contingent, or unliquidated.  Parties satisfied with the manner in

which their claim or interest is listed in the Schedules need not file a Proof of Claim in the Bankruptcy Case, but if there is disagreement with the amount so scheduled, unless a Proof of Claim is filed, the amount of the claim or interest shown in the Schedules establishes the amount of the claim or interest for all purposes in the Bankruptcy Case.

A Proof of Claim filed in the Bankruptcy Case automatically supersedes the Schedules, unless objected to by Debtor or the Reorganized Debtor under the Plan.  The Plan provides that Debtor will have 120 days following the Effective Date within which to object to Proofs of Claim or claims that are deemed filed under Section 1111(a), or within 90 days after the Filing of such Proof of Claims, whichever is later.  Creditors have the burden of checking Debtor's Schedules to determine if their Claims are accurately scheduled.

### 2.        Initial Debtor Interview; Meeting of Creditors.

On February 18, 2016, Debtor participated in the Initial Debtor Interview with the U.S. Trustee's Office. On February 23, 2016, Debtor attended the 341 Meeting of Creditors.

### 3.        No Committee of Unsecured Creditors Appointed.

No creditor's committee has been appointed in the Bankruptcy Case.

### 4.        Bar Date for Proofs of Claim.

The Bankruptcy Court set May 23, 2016 as the Bar Date for filing Proofs of Claim for any person or entity except governmental entities.  (*See* Dkt. No. 5).  Any person or entity who is required to but fails to file a Proof of Claim on account of a Pre-petition Claim on or before the Bar Date is forever barred, estopped, and enjoined from voting on, or receiving a distribution under the Plan, and is forever barred, estopped, and enjoined from asserting a Pre-petition Claim against Debtor, its estate, or any successors or assigns.

To date, some Claims have been filed with the Bankruptcy Court.  Some of these claims could be disputed by Debtor or by the Reorganized Debtor.  Debtor has been reviewing, and will continue to review, such Claims with respect to amount, classification, and validity.

Debtor or the Reorganized Debtor will file Claims objections, as appropriate, based on its continuing reconciliation of the Claims, including with respect to amount, classification, and validity. As further set forth in the Plan and Disclosure Statement, the Confirmation Order will also serve as a Bar Date Order for certain Claims, including certain Administrative Claims not governed by another Bar Date.

### 5.        Avoidance of Transfers.

The Statements of Financial Affairs filed in the Bankruptcy Case reflects potential preferential payments based upon the presumption of the insolvency of the Debtor during the 90 days preceding the Petition Date under 11 U.S.C. § 547.  If you received a payment or other transfer within 90 days of the bankruptcy, then such transfer may be subject to avoidance under the Bankruptcy Code, including its Sections 544, 547, and 550.

Payments totaling in excess of $127,126.55 on account of antecedent debt to any one creditor during the 90 day-period immediately preceding the filing of this Chapter 11 Case were as follows:

| | |
|---|---|
| Choice Hotels International, Inc.: | $28,627.71 |
| Georgia Department of Revenue: | $20,733.37 |
| Georgia Power: | $10,679.93 |
| Quantum National Bank: | $31,761.48 |
| Sam's Club: | $24,053.97 |
| U.S. Department of Treasury: | $11,270.09 |

These payments are potentially avoidable as preferences under Section 547 of the Bankruptcy Code. The Bankruptcy Code provides defenses against the forced repayment of such a payment, including, but not limited to, that such payment was in the ordinary course of business of both the debtor and the transferee, that the debtor was solvent on the date the payment was made, or that new value was provided at or about the same time as the payment. The Reorganized Debtor does not plan to attempt to recover these payments because the Plan proposes payments to creditors in excess of the amount by which its liquidation value would be increased in the event it was able to recover the amounts of these payments recoverable under Section 547. Therefore, creditors receive the benefit of the recovery of these payments without the Debtor having to incur the cost of their recovery.

### 6.    Potential Claims Against Affiliates.

Under Chapter 11 of the Bankruptcy Code, a debtor-in-possession is not charged with the responsibility of examining claims or possible causes of action against Insiders, such as Affiliates, shareholders, members, partners, managers, officers, or directors. Usually, that duty is placed upon the creditors' committee.[1] However, a committee has not been appointed in this Bankruptcy Case.

Notwithstanding Debtor's lack of duty to "investigate itself," in keeping with its responsibility to make full disclosures to interested parties and to the Court, in its Schedules and Statement of Financial Affairs Debtor has identified transactions which occurred during the two years prior to the Petition Date. In any event, Debtor shows that pursuing the recovery of such Claims may not be necessary or a beneficial use of Debtor's resources.

Payments to Insiders in the year before the Bankruptcy were as follows:

---

[1]  The rights, powers, and duties of a debtor-in-possession are specified in Section 1107 of the Bankruptcy Code. Those duties include the powers and functions of a Chapter 11 trustee except the duties specified in Sections 1106(a)(2), (3) and (4) (the "Excluded Duties"). Section 1106(3) includes the duty to "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or the formulation of a plan." Conversely, Section 1103(2) of the Bankruptcy Code provides that a committee may "investigate the acts, conduct, assets, liabilities an financial condition of the debtor, the operation of the debtor's business, and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan."

Rashmi Patel:         $52,580.60
Chetan N. Patel:      $18,397.61
Chetan T. Patel:      $20,000.00

These payments are also potentially avoidable as preferences to insiders under Section 547 of the Bankruptcy Code. The Bankruptcy Code provides the same defenses against the forced repayment of such a payment to insiders that are afforded to non-insiders, including, but not limited to, that such payment was in the ordinary course of business of both the debtor and the transferee, that the debtor was solvent on the date the payment was made, or that new value was provided at or about the same time as the payment. The Reorganized Debtor does not plan to attempt to recover these payments because the Plan proposes payments to creditors in excess of the amount by which its liquidation value would be increased in the event it was able to recover the amounts of these payments recoverable under Section 547. Therefore, creditors receive the benefit of the recovery of these payments without the Debtor having to incur the cost of their recovery.

## V.    **SUMMARY OF THE PLAN**

THE FOLLOWING IS A BRIEF SUMMARY OF THE PLAN. HOLDERS OF CLAIMS AND INTERESTS ARE URGED TO READ THE PLAN IN FULL. HOLDERS OF CLAIMS AND INTERESTS ARE ALSO URGED TO AND SHOULD CONSULT WITH COUNSEL IN ORDER TO UNDERSTAND AND ANALYZE THE PLAN FULLY. IF CONFIRMED, THE PLAN WILL BECOME A LEGALLY BINDING AGREEMENT BETWEEN DEBTOR AND ALL CREDITORS AND PARTIES-IN-INTEREST.

### A.    **Introduction.**

The Plan provides for the treatment of Allowed Claims and Equity Interests. A Claim is generally defined by the Plan and the Bankruptcy Code to be a right to payment from Debtor, or from the property of Debtor, or a right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment. The Plan defines an Allowed Claim as follows: (a) a Claim that has been listed by Debtor on its Schedules as other than disputed, contingent, or unliquidated, to the extent that it is not otherwise a Disputed Claim; (b) a Claim for which a Proof of Claim has been Filed by the applicable Bar Date or has otherwise been deemed timely Filed under applicable law, to the extent that it is not otherwise a Disputed Claim; or (c) a Claim that is allowed: (i) in any Stipulation of Amount and Nature of Claim executed by Debtor or Reorganized Debtor, as applicable, and Creditor; (ii) in any contract, instrument, or other agreement entered into in connection with the Plan; (iii) in a Final Order; or (iv) pursuant to the terms of the Plan.

The categories of Claims and Equity Interests listed below classify Claims and Interests for all purposes, including voting, Confirmation and distribution pursuant to the Plan and pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan designates five (5) Classes of Claims (including subclasses) and one Class of Equity Interests. These Classes take into account the differing nature and priority under the Bankruptcy Code of the various Claims and Interests. A Claim or Interest will be deemed classified in a particular Class only to the

extent that the Claim or Interest qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.  A Claim or Interest is in a particular Class only to the extent that such Claim or Interest is allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.  To the extent that the holders of any Allowed Claims or Interests object to Debtor's classification scheme, such objections will be considered at the Confirmation Hearing, and if sustained, the classifications outlined below will be deemed modified in accordance with any order sustaining such objections.

Any Class of Claims that, as of the date of the commencement of the Confirmation Hearing, contains no Allowed Claims will be deemed deleted from the Plan for purposes of determining acceptance or rejection of the Plan by such Class under Section 1129(a)(8) of the Bankruptcy Code.

The classification of Claims against and Equity Interests in Debtor, all of which are eligible to vote on the Plan, and their respective treatment pursuant to the Plan, are as follows:

| Class | Impairment | Treatment |
|---|---|---|
| **Unclassified Claims** | Unimpaired | Certain Claims may not be classified under Chapter 11 plans, including: Claims entitled to Administrative Expense Status, U.S. Trustee Fees, and Court Costs.  The Plan provides for payment of Unclassified Claims on or before the Effective Date of this Plan, unless otherwise agreed by the Holder of such an Unclassified Claim. Claims entitled to Priority Status under 11 U.S.C. § 507(a)(8) (certain tax claims) shall be paid in a manner authorized under 11 U.S.C. § 1129(a)(9)(C), within the times specified therein. |
| **Class 1** – Non-Tax Priority Claims | Impaired | There are no known claims in this Class.  If such claims are Allowed by the Bankruptcy Court, except to the extent the Holder of an Allowed Class 1 Claim agrees to other, lesser treatment, any Holder of an Allowed Class 1 Claim shall be paid in full within the later of fourteen (14) days after the Effective Date or the date of allowance of such claims, which date of payment shall be deemed to be the Effective Date with respect to any such Claims. |
| **Class 2** Allowed Secured Claim of | Impaired | The Allowed Secured Claim of |

12

| | | |
|---|---|---|
| **Quantum National Bank** | | Quantum National Bank ("Quantum") is estimated to total approximately **$1,059,801.00** as of the Effective Date.  The Class 2 Secured Claim will be satisfied in full as follows:  The Reorganized Debtor shall pay the allowed amount of the Class 2 Secured Claim, together with Plan Interest (which shall accrue from the Effective Date), amortized over 360 months, in 119 equal monthly installments of approximately **$5,689.24** each, commencing on the last day of the month following the month in which the Effective Date occurs, with a like payment on or before the last day of each month thereafter, with a final balloon payment of **$867,753.35** as the 120th payment, such that the Class 2 Secured Claim will be paid in full in 120 payments. The Allowed Secured Claim included in the Class 2 Secured Claim will be evidenced by a new modified secured promissory note from the Reorganized Debtor in substantially the form shown on **Exhibit 1** to this Plan (the "Modified Class 2 Secured Note").  The principal amount of the Modified Class 2 Secured Note shall equal the amount of the Class 2 Allowed Secured Claim. The Holder of the Class 2 Secured Claim shall retain the lien(s) securing the Modified Class 2 Secured Note until such note is satisfied in full, and the note may be pre-paid in whole or part at any time, without penalty. |
| **Class 3** – Allowed Unsecured Non-Deficiency Class Claims | Impaired | Allowed Unsecured Non-Deficiency Claims in Class 3 consist of all Allowed Unsecured Claims that are not Deficiency Claims. Holders of Claims in Class 3 who do not elect to be included in Class 5 will be paid on account of such Claims, Pro-Rata, the lesser of (i) 15% of the Reorganized |

| | | |
|---|---|---|
| | | Debtor's net operating income for each of the five (5) full calendar years after the Effective Date, commencing as of January 1, 2017 and (ii) the Allowed Amount of each Class 3 Allowed Claim. Each such payment shall be paid by the Reorganized Debtor by March 31 of the year following the conclusion of each full calendar year, with the first such payment being due on or before March 31, 2018.  Holders of Claims that remain in Class 3 and Class 4 shall share in the net operating income, Pro-Rata, based on the amount of their Allowed Claim. Allowed Claims in Class 3 are estimated to total approximately **$470,301.10** as of the Effective Date. |
| **Class 4** – Allowed Unsecured Deficiency Claims | Impaired | Allowed Unsecured Deficiency Claims in Class 4 consist of all Allowed Unsecured Deficiency Claims. Holders of Claims in Class 4 who do not elect to be included in Class 5 will be paid on account of such Claims, Pro-Rata, the lesser of (i) 15% of the Reorganized Debtor's net operating income for each of the five (5) full calendar years after the Effective Date, commencing as of January 1, 2017 and (ii) the Allowed Amount of each Class 4 Claim. Each such payment shall be paid by the Reorganized Debtor by March 31 of the year following the conclusion of each full calendar year, with the first such payment being due on or before March 31, 2018.  Holders of Claims that remain in Class 3 and Class 4 shall share in the net operating income, Pro-Rata, based on the amount of their Allowed Claim. Allowed Claims in Class 4 are estimated to total approximately **$927,982.00** as of the Effective Date. |

14

| | | |
|---|---|---|
| **Class 5 –** Unsecured Creditors in Classes 3 and 4 Who Opt-Into Class 5 | Impaired | Class 5 consists of Holders of Allowed Unsecured Claims in Class 3 and Class 4 who opt-into the treatment proposed for Class 5. As an alternative to the treatment proposed for Holders of Allowed Claims in Class 3 and Class 4, the Reorganized Debtor will pay Holders of Allowed Unsecured Claims in Class 3 and Class 4 who opt-into Class 5, in full satisfaction of such Class 3 and Class 4 Allowed Claims, 100% of the Allowed Amount of such Claims up to and including $8,500.00, without interest, within 30 days following the Effective Date. The election of Holders of Allowed Unsecured Claims in Class 3 and Class 4 to be included in Class 5 shall be deemed to be each such electing Creditor's (i) vote in favor of and consent to the treatment provided in the Plan for Class 5 and (ii) waiver, in exchange for the Class 5 Cash payment, of the remainder of its Allowed Unsecured Claim that exceeds $8,500.00. |
| **Class 6 –** Equity Interest Holders of Sandalwood Hospitality, LLC | Impaired | The Equity Interest Holders of the Reorganized Debtor will retain their equity interests and all associated rights, but, except for the annual Income Tax Distribution, will receive no distributions on account of such equity interests until all Allowed Claims have been paid as provided by this Plan. |

## B.   Unclassified Claims

### 1.   General Administrative Claims.

The Plan provides that, except to the extent the holder of an Allowed Administrative Claim agrees to other, lesser treatment, and except with respect to Cure Costs, each holder of an Allowed Administrative Claim shall be paid in respect of such Allowed Claim the full amount

thereof, in Cash, by the later of (i) the Effective Date, or (ii) the date on which such Claim becomes an Allowed Administrative Claim.

      **2.**      **Statutory Fees.**

The Plan provides that Allowed Administrative Claims for fees payable pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid in Cash, in full, as such fees become due.

      **3.**      **Fee Claims.**

The Plan provides that Professionals having Allowed Fee Claims will be paid in full, in Cash, by Debtor or the Reorganized Debtor in accordance with the Order Establishing Compensation Procedures (entered in the Bankruptcy Case on February 19, 2016 (Dkt. No. 50) on the date upon which the Bankruptcy Court order allowing such Fee Claims becomes a Final Order.  Upon entry of the Confirmation Order, Reorganized Debtor shall set aside in escrow any unpaid amounts estimated to be owed to Professionals for Fee Claims through the Effective Date (less amounts previously paid or paid on an interim basis after Confirmation as authorized by the Administrative Fee Order) pending entry of a Final Order on each such Professionals' application for Allowance of its Fee Claim.  After the Effective Date, Professionals of the Reorganized Debtor be compensated as set forth in the Plan.

The Bankruptcy Court must rule on all Professional fees and expenses incurred from the Petition Date through and including the Effective Date unless the order approving such Professionals' retention provides otherwise.  Pending final allowance of professional fees by the Court, the Professionals will continue to receive advances to the extent provided for under the Compensation Procedures Order and the Cash Collateral Orders.  Post-confirmation fees may be paid by Reorganized Debtor in the ordinary course of business without application to, or approval by, the Court.

<u>**Bar Dates for Fee Claims for Professionals or other Entities asserting a Fee Claim for services rendered before the Effective Date**</u>.

Such Professionals and Entities must File and serve on the United States Trustee, and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Bankruptcy Court, an application for final allowance of such Fee Claim no later than 60 days after service of the notice of entry of the Confirmation Order.  **Failure to File timely and serve such application will result in the Fee Claim being forever barred and discharged.**  Objections to any Fee Claim must be Filed and served on the parties that were served with such application and the requesting party by the later of (a) 30 days after the Effective Date; (b) 30 days after the filing of the applicable request for payment of the Fee Claim; or (c) such later date as provided for by order of the Bankruptcy Court.

      **4.**      **Bar Dates for General Administrative Claims and Rejection Claims.**

The holder of an Administrative Claim or a Rejection Claim *other than* (1) a Fee Claim, (2) a Post-petition Obligation incurred and payable in the ordinary course of business by Debtor (and not past due, but excluding personal injury claims – the holders of which must initiate an

appropriate procedure for allowance thereof under this subparagraph of this Plan on or before the Administrative Bar Date), (3) statutory fees payable pursuant to 28 U.S.C. § 1930, (4) an Administrative Claim that has been Allowed on or before the Effective Date, and (5) a Cure Cost Claim, must File and serve on the Debtor, any Committee, and the United States Trustee, a request for payment of such Administrative Claim within the later of thirty (30) days after service of notice of entry of the Confirmation Order to the last known addresses of such holders (the "Administrative Bar Date"). Such request must include at a minimum (a) the name and address of the holder of the Claim, (b) the amount of the Claim, and (c) the basis of the Claim. *Failure to File and serve such request timely and properly shall result in the Administrative Claim being forever barred and discharged.* Objections to general Administrative Claims must be Filed and served on the parties that were served with such Claims or requests and the requesting party by the later of (a) 30 days after the Effective Date; (b) 30 days after the Filing of the applicable request for payment of Administrative Claims; or (c) such later date as provided for by order of the Bankruptcy Court, which order may be entered upon application of the Reorganized Debtor without further notice or hearing (the "Administrative Claim Objection Deadline"). *The holders of the Administrative Claims enumerated in (1) – (5) above of this paragraph shall not be required to file a request for payment of their Administrative Claims, and shall be paid as specified above.*

### 5. Priority Tax Claims.

Priority Tax claims consist of any Claim of a governmental unit of a kind specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code. These unsecured Claims are given a statutory priority in right of payment. The Plan provides that each holder of an unassigned Allowed Priority Tax Claim will be paid in respect of such Allowed Claim (including with respect to any interest that is determined to be part of its Allowed Claim), at the option of the Reorganized Debtor, (a) the full amount thereof, in Cash, by the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Claim; or (b) payment in Cash installments with statutory interest thereon on each anniversary of the Effective Date, until the fifth anniversary of the Petition Date (provided that the Reorganized Debtor may prepay the balance of any such Allowed Priority Tax Claim, including accrued Plan Interest through the payment date, and shall do so prior to the Final Distribution Date); or (c) shall receive such lesser amount or other treatment as the holder of an Allowed Priority Tax Claim and the Reorganized Debtor might otherwise agree.

### C. Classification and Treatment of Claims and Interests.

The treatment of and consideration to be received by holders of Allowed Claims and Interests pursuant to Article III of the Plan shall be in full and in complete satisfaction, settlement, and release of the Estate's obligations with respect to such Claims and Interests. The Estate's obligations in respect of such Claims and Interests shall be satisfied in accordance with the terms of the Plan, as shown in the foregoing chart. Transfers of Claims are governed by Bankruptcy Rule 3001. The Reorganized Debtor need not recognize any transfer of a Claim that fails to comply with such Rule.

**D.      Means of Implementation of the Plan.**

**1.      Reorganized Debtor and Powers And Duties.**

The Plan will be administered by the Reorganized Debtor.  As of Confirmation, the Reorganized Debtor will be vested with power and authority over all Assets of the Reorganized Debtor, with the obligation to manage its affairs and make distributions in accordance with the Plan.  Reorganized Debtor shall also have standing to pursue Causes of Action on behalf of the Estate as provided under the Bankruptcy Code.  The Reorganized Debtor shall be indemnified by the Estates for fees and costs, including attorneys' fees, for any actions taken or not taken, except for those done with gross negligence or malicious intent.

The Reorganized Debtor shall be vested with and shall have all rights, powers, and duties that it had as a Debtor-in-Possession immediately prior to Confirmation under Sections 1106, 1107, 1108 of the Bankruptcy Code and otherwise, including, without limitation, with respect to the Causes of Action (whether or not commenced as of Confirmation).  The Reorganized Debtor shall have exclusive control of the Assets, including, without limitation, the Causes of Action.  The Reorganized Debtor shall have authority to authorize the sale, refinance, abandonment, or other liquidation of any or all Assets.  The Reorganized Debtor shall be the representative of the Estate and shall have the capacity to sue and be sued, and object to the allowance of claims, as provided under Sections 323 and 1123(b)(3) of the Bankruptcy Code.

The Plan provides that Reorganized Debtor shall be empowered to and shall make all distributions required to be made under this Plan, and shall be authorized and empowered to fully act as of the Effective Date, including, without limitation, to (a) operate the Reorganized Debtor with full requisite authority to implement this Plan, borrow money, purchase and sell assets, and take all further action as may be required in the best interests of the Reorganized Debtor and consummation of this Plan, (b) prosecute, settle, or release in the name of the Reorganized Debtor all Causes of Action, in accordance with the best interest of and for the benefit of the Creditors entitled to receive distributions under the Plan; (c) prosecute objections to Claims; (d) resolve Disputed Claims; (e) make distributions to the holders of Allowed Administrative Claims, Allowed Priority Tax Claims, and holders of other Allowed Claims (as their respective interests may appear in accordance with this Plan) in as prompt, efficient, and orderly fashion as possible in accordance with the Plan; (f) perform administrative services related to the implementation of this Plan; (g) employ attorneys and other Professionals, as further set forth below, to assist in fulfilling the Reorganized Debtor's obligations under the Plan; and (h) otherwise act in accordance with the corporate governance of the Reorganized Debtor, this Plan, and orders of the Bankruptcy Court.  Reorganized Debtor shall operate substantially in conformity with the Budget; provided, however, that departures from the Budget (other than failures to make distributions or payments required under the Plan), standing alone, shall not constitute a default under this Plan.  The Budget is submitted to creditors as a template of future operations of the Reorganized Debtor to demonstrate feasibility of this Plan and is aspirational in nature.  Strict compliance with the Budget shall not be construed as a contractual obligation to creditors under this Plan.

The Plan provides that the Reorganized Debtor will perform the duties and obligations imposed on the Reorganized Debtor with reasonable diligence and care under the circumstances.

For additional information about the Reorganized Debtor, please refer to the full text of the Plan.

**2.      Closing of Case; Sandalwood's Business Records.**

The Plan provides that contemporaneously with the substantial consummation of the Plan, the Reorganized Debtor will seek authority from the Bankruptcy Court to close Sandalwood's Chapter 11 Case in accordance with the Code and the Bankruptcy Rules.  The Reorganized Debtor will arrange for subsequent maintenance and storage, for any period required by law, or other custody and control of the business records of Sandalwood and the Post-confirmation Reorganized Debtor, unless the Bankruptcy Court orders otherwise.

**3.      Executory Contracts.**

**(a) Assumed Contracts.**

On the Confirmation Date, all Executory  Contracts and unexpired leases, including, without limitation, any Insurance Contracts, but not including Debtor's Franchise Agreement with Choice Hotels International, are deemed assumed, in accordance with the provisions of Sections 365 and 1123, and any other relevant provisions of the Bankruptcy Code. Debtor anticipates working out a consensual, restructured arrangement with Choice Hotels International or leaving the Choice Hotels International system (as may be necessary).

**(b) <u>Cure Costs</u>.**

All Allowed Cure Costs (which are defined in the Plan as Administrative Claims) associated with the assumed Executory Contracts will be paid in accordance with Section 3.2.1 of the Plan.

**<u>Exhibit B</u>** attached hereto reflects the Debtor's good faith estimates as to the Cure Cost for each Executory Contract to be assumed.  Any Executory Contract not shown on such **<u>Exhibit B</u>** indicates that the Debtor believes that there will be no default under such Executory Contract as of the Effective Date, and thus no Cure Costs required.  In the event of a dispute regarding: (a) the existence or amount of any Cure Costs, (b) the ability of the Reorganized Debtor to provide "adequate assurance of future performance" (within the meaning of Section 365 of the Bankruptcy Code) under the Executory Contract to be assumed, or (c) any other matter pertaining to the assumption, the Debtor intends to attempt to resolve such dispute consensually and, failing that, through order of the Bankruptcy Court.  Either party to the Executory Contract which is the subject of the dispute may in its discretion file with the Bankruptcy Court a request for determination of the dispute within sixty (60) days after the Effective Date.  In the event a request for determination is timely filed, the dispute shall be litigated to Final Order and shall then be paid by as outlined above for Executory Contracts, as appropriate, unless otherwise consensually resolved by the parties to the Executory Contract.  **Any party to an Executory Contract which is the subject of such a dispute who does not file a request for determination within such sixty (60) day period will waive its rights with respect to such dispute, will be forever barred from prosecuting such dispute, and will be deemed to have**

accepted any amount paid by the Reorganized Debtor under Section 5.2 of the Plan in full satisfaction of any Cure Cost Claim under the subject Executory Contract.

### E.    Provisions Governing Payment and Distributions.

### 1.    Manner of Payment.

Under the Plan, any payment in Cash to be made by the Reorganized Debtor will be made at the election of the Reorganized Debtor, by check drawn on a domestic bank or by wire transfer from a domestic bank.

### 2.    Funds and Accounts for Distributions and Plan Implementation.

The Plan provides that Reorganized Debtor will or may, as applicable, establish the Disputed Claims Reserve, the Plan Expense Reserve, and the Ad Valorem Tax Escrow as further provided in the Plan, and any other funds or accounts, that the Reorganized Debtor deems necessary or desirable to implement the Plan.

The Reorganized Debtor may establish a Plan Expense Reserve for the purpose of funding and implementing the Plan.  On the Effective Date, or as soon thereafter as reasonably practicable, the Reorganized Debtor may create a reserve for Plan expenses, including Litigation Costs necessary to adequately fund litigation which the Reorganized Debtor in its business judgment determines is likely to produce a recovery in excess of the costs of pursuing the Cause of Action, which will be called the Plan Expense Reserve.  It may also establish an Ad Valorem Tax Escrow for paying *ad valorem* taxes.  The Reorganized Debtor may transfer an appropriate amount of Cash into such plan accounts as the Reorganized Debtor deems necessary and desirable to fund pay Plan expenses and *ad valorem* taxes efficiently and promptly.

### 3.    Distributions on Allowed Claims and Interests.

Distributions on Claims will be made in accordance with Article VI of the Plan.   The Reorganized Debtor will make no distribution to holders of Claims that are not Allowed Claims as defined in the Plan.  Notwithstanding any other provision of the Plan, the Reorganized Debtor will have discretion to make the distributions called for under the Plan at the times specified in the Plan, or earlier if the Reorganized Debtor deems such earlier distribution to be necessary or beneficial.  Please refer to Article VI of the Plan for more specific detail on payment and distributions with respect to particular Classes of Claims, including Allowed Claims as of the Effective Date, Disputed Claims, and Subsequently Allowed Claims.

### 4.    Distributions on Unclassified, Non-Tax Priority, and Secured Claims.

The Plan generally provides that, on the Effective Date, the Reorganized Debtor will pay to each of the holders of Allowed Administrative Claims, Allowed Priority Tax Claims (subject to the right to make deferred cash payments to such claimants in accordance with Section 1129(a)(9)(C) of the Bankruptcy Code), and Non-Tax Priority Claims the amount provided in Article III of the Plan, unless such holder and the Debtor or the Reorganized Debtor, as the case may be, agree upon other, lesser terms for the treatment of such Claim.

The Plan provides, as more specifically set forth therein, that at the times of distribution to Allowed Claims, the Reorganized Debtor will cause a transfer to the Disputed Claims Reserve of the amount of Cash necessary to pay the amount due at such distribution to Disputed Claims related to the above, to be paid by the Reorganized Debtor from the Disputed Claim Reserve if and when such claim becomes an Allowed Claim.

For the purpose of setting aside the Disputed Claims Reserve as provided in the Plan, the Reorganized Debtor will, on account of such Disputed Claim, deposit into the Disputed Claims Reserve an amount equal to the distribution due to the holder of the Disputed Claim based upon the face amount of any Proof of Claim or request for payment of Administrative Claim filed by the holder of a Disputed Claim or, if no Proof of Claim or Request for Payment has been filed, the amount shown by any pleading asserting the claim, if no such pleading has been filed, the amount shown by Debtor's Schedules.

### 5.  Distributions with respect to Other Classes

The Reorganized Debtor will deposit into the Disputed Claims Reserve the distribution which would have been due to all holders of Disputed Claims in such Classes if they were Allowed Claims.

With respect to each Disputed Claim in such Classes, the Reorganized Debtor shall deposit into the Disputed Claims Reserve the distribution which would have been due to the holder of such Disputed Claims in such Classes as if they were Allowed Claims, as calculated in Section 6.4.1(a) of the Plan.

### 6.  Previously Disputed Claims that Are Subsequently Allowed.

The Plan provides that within fifteen (15) days from the date of which any order of the Bankruptcy Court allowing a previously Disputed Claim becomes a Final Order, with no appeal pending, or if an appeal is filed, the date on which all orders affirming allowance of such claims becomes non-appealable, the Reorganized Debtor will withdraw from the Disputed Claims Reserve an amount equal to the amount deposited into the Disputed Claims Reserve on account of each previously Disputed Claim and will then pay the holder of such previously Disputed Claim the amount due on such Claim as of the date of such distribution to its Class. No interest will be payable on account of any delayed distribution unless such interest is a distribution of Post-confirmation Interest specifically set forth in the Plan and payable for that Class.

In the event a Disputed Claim (including any interest) is finally Allowed in an amount less than the face amount of any Proof of Claim filed by the holder of such Disputed Claim or is subordinated or re-characterized, the Reorganized Debtor will recalculate the accumulated distribution to all holders of Allowed Claims in the affected Class using the formula specified in the Plan and will likewise recalculate the accumulated distribution due to the holder of the previously Disputed Claim. The dividend thus calculated to the holder of the previously Disputed Claim will thereupon be paid to the holder of such Claim. For purposes of all subsequent distributions, the previously Disputed Claim will be treated as an Allowed Claim and included in the appropriate Class and will be paid accordingly with the rest of its Class.

7. **Unclaimed Distributions.**

Under the Plan, payment will be stopped on checks disbursed by the Reorganized Debtor to holders of Allowed Claims if such checks remain not cashed ninety (90) days after the date of disbursement. The Cash represented by such checks shall be redistributed Pro Rata to holders of the remaining Allowed Claims, as provided under this Plan at the time of the next scheduled distribution to Allowed Claims hereunder. No further distribution shall be made under the Plan to the holder of any Allowed Claim who fails to negotiate a check issued by the Reorganized Debtor on account of a claim for payment within the ninety (90) days after the date such check was mailed to the holder, and any unclaimed distribution on account of such Allowed Claim shall thereby be deemed waived. Any distribution remaining unclaimed at the expiration of such ninety (90) day period shall become property of the Reorganized Debtor pursuant to Section 347(b) of the Bankruptcy Code.

8. **Rounding of Dividend Amounts.**

The Plan provides that notwithstanding any other provision of the Plan, the Reorganized Debtor shall not be required to make any distribution of less than $10.00 to the holder of any Allowed Unsecured Claim, and may round all distributions to Allowed Unsecured Claims the nearest $1.00.

9. **No Interest or Attorneys' Fees.**

Except as expressly stated in the Plan or as allowed by the Bankruptcy Court, no interest, penalty, or late charge arising after the Petition Date, and no award or reimbursement of attorneys' fees or related expenses or disbursements arising after the Petition Date will be allowed on, or in connection with, any Claim. This provision will apply whether the distribution on such Claim is made on the Effective Date or thereafter.

10. **Distributions to the Last Known Address.**

Distributions to holders of Allowed Claims will be sent to the last known address set forth on such holder's Proof of Claim Filed with the Bankruptcy Court, or on the Schedules, if no proof of Claim has been filed. Holders of Claims may change the address to which distributions, if any, will be sent by furnishing written notice to the Reorganized Debtor, in accordance with the notice provisions of the Plan. A proper notice of change of address will be effective for a distribution if received at least 30 days in advance of such distribution date. U.S. Postal notifications of changes of address will be honored, provided that the Reorganized Debtor shall have no obligation to investigate the address of the holder of an Allowed Claim following expiration of such U.S. Postal notifications.

11. **Withholding or Other Taxes.**

The Plan provides that any federal, state, or local withholding or other taxes or other amounts required to be withheld under applicable law will be deducted from distributions under the Plan. All Persons holding Claims will be required to provide any information necessary to effect the withholding of such taxes.

### 12.    Subordination Rights.

All subordination rights, claims, and defenses of the Debtor and Reorganized Debtor shall remain valid, enforceable, and unimpaired in accordance with Section 510 of the Bankruptcy Code or otherwise, except as otherwise specifically provided in the Plan.

### F.    Provisions Governing Objections to Claims.

### 1.    Allowance of Claims.

Except as expressly provided in the Plan or any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), no Claim will be deemed allowed unless and until such Claim is deemed Allowed under the Bankruptcy Code or agreed to be Allowed by the Debtor, by the Reorganized Debtor in accordance with the Plan, or so ordered by Final Order of the Bankruptcy Court.  Except as expressly provided in the Plan, the Reorganized Debtor after Confirmation will have and retain any and all rights and defenses that the Debtor had with respect to any Claims as of the Petition Date, including the Causes of Action referenced in the Plan and the Disclosure Statement and the Filing of any motions or other pleadings for estimation of the amount of Disputed Claims.  All Claims of any Person or Entity that owes money to Reorganized Debtor will be disallowed unless and until such Person or Entity pays the full amount it owes Reorganized Debtor.

### 2.    Examination and Objections to Claims.

The Plan provides that following the Effective Date, the Reorganized Debtor shall examine all Claims not previously objected to by Debtor and shall have the responsibility of filing objections to the allowance of such Claims and continuing prosecutions of objections to Claims filed prior to the Effective Date..

Except as otherwise specified in the Plan (including, without limitation, with respect to Administrative Claims, Fee Claims, and Cure Cost Claims), objections to Claims shall be Filed with the Bankruptcy Court and served upon Creditors by the Claims Objection Bar Date, which shall be no later than 120 days after the Effective Date or 90 days after such Claim is Filed, whichever date is later; provided, however, that this deadline may be extended by the Bankruptcy Court upon motion of the Reorganized Debtor, without notice or a hearing.  After an order, judgment, decree, or settlement agreement allowing a Disputed Claim becomes a Final Order, Distributions with respect to and on account of such previously Disputed Claim will be made on or before the time of the next scheduled distribution to holders of Allowed Claims in the Class in which the previously Disputed Claim is allowed.

### 3.    Claim Resolution.

Objections to Claims may be litigated to judgment, settled, or withdrawn by the Reorganized Debtor.  The Plan provides that the Reorganized Debtor have authority to settle any Claim without any notice or approval of any other party, unless such settlement would result in a decrease to the distribution provided to any other Allowed Claim under the Plan, in which event such settlement and impact on Allowed Claims will be noticed as provided under Bankruptcy Rule 9019, with a hearing to be conducted upon any objection filed pursuant to such notice.  Any

23

settlement may be presented for approval to the Bankruptcy Court, upon the request of the Reorganized Debtor of the holder of the formerly disputed claim.

### 4.     No Distributions to Holders of Disputed Claims.

The Plan provides that notwithstanding any other provision of the Plan, no Cash or other Property will be distributed under the Plan on account of any Disputed Claim.

### 5.     Estimation of Claims.

Under the Plan, the Reorganized Debtor may, at any time, request that the Bankruptcy Court estimate any Claim pursuant to Section 502(c) of the Bankruptcy Code, as applicable, regardless of whether the Debtor or the Reorganized Debtor previously have objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during the litigation concerning any objection to any Claims, including, without limitation, during the pendency of any appeal relating to any such objection. Subject to the provisions of Section 502(j) of the Bankruptcy Code, in the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, the amount so estimated shall constitute the Allowed amount of such Claim. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor or the Reorganized Debtor may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court

### G.     Provisions Regarding Effects of Confirmation

### 1.     Discharge of Reorganized Debtor.

**Under the Plan, the effects of Confirmation will be as provided under Bankruptcy Code Sections 1141(a), (b), (c), and (d) and 524(a). The applicable Code sections provide, in relevant part:**

### § 1141. Effect of confirmation

**(a)** Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

**(b)** Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

**(c)** Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a

plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor.

**(d)**

**(1)** Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—

**(A)** discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502 (g), 502 (h), or 502 (i) of this title, whether or not—

**(i)** a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;

**(ii)** such claim is allowed under section 502 of this title; or

**(iii)** the holder of such claim has accepted the plan; and

**(B)** terminates all rights and interests of equity security holders and general partners provided for by the plan . . .

**(6)** Notwithstanding paragraph (1), the confirmation of a plan does not discharge a debtor that is a corporation from any debt—

**(A)** of a kind specified in paragraph (2)(A) or (2)(B) of section 523 (a) that is owed to a domestic governmental unit, or owed to a person as the result of an action filed under subchapter III of chapter 37 of title 31 or any similar State statute; or

**(B)** for a tax or customs duty with respect to which the debtor—

**(i)** made a fraudulent return; or

**(ii)** willfully attempted in any manner to evade or to defeat such tax or such customs duty.

## § 524 Effect of discharge

(a) A discharge in a case under this title--

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and

(3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case . . .

**2.      Post-confirmation Effects of Evidences of Claims or Interests.**

On the Effective Date, except as otherwise provided in the Plan, all notes, or evidences of indebtedness other than deeds to secure debt and security agreements creating liens in the Debtor's Assets, shall be novated into the Plan, and thereafter the Plan and any document issued in furtherance thereof shall govern the rights of the parties.  The Plan does not alter the ownership rights of the members or shareholders of the Reorganized Debtor.

**3.      Preservation of Causes of Action.**

The Plan provides that upon the occurrence of the Effective Date, all Causes of Action of the Debtor and the Estate will be retained and preserved for enforcement by the Reorganized Debtor.  The Reorganized Debtor will have the power and right to commence or continue and otherwise enforce any Causes of Action of the Debtor and/or the Estate, all of which will be retained and preserved hereby, notwithstanding Confirmation or consummation of the Plan.

The Reorganized Debtor has or will be deemed to have all rights on behalf of the Debtor and/or the Estate to commence and pursue any and all Causes of Action (under any theory of law, including, without limitation, the Bankruptcy Code, and in any court or other tribunal including, without limitation, in an adversary proceeding Filed in the Chapter 11 Case) discovered in such an investigation, to the extent the Reorganized Debtor deems pursuit of such Cause of Action appropriate.  Potential Causes of Action currently being investigated by the Company, which may, but need not be, pursued by the Debtor prior to the Effective Date and by the Reorganized Debtor after the Effective Date as warranted but which will be retained after Confirmation include, without limitation, the following:

(a)      Causes of Action.  All Causes of Action, whether legal, equitable, or statutory in nature, arising out of, or in connection with the Debtor's business or operations, including, without limitation, the following: possible claims against vendors, tenants, sublessees, assignees, customers or suppliers, general contractors, or subcontractors for warranty, indemnity, back charge/set-off issues, overpayment or duplicate payment issues and collections/account receivables matters; deposits or other amounts owed by any creditor, lessor, utility, supplier, vendor, sublessee, assignee, or other Person or Entity; employee, management or operational matters; claims against sublessees and assignees arising from the various leases, subleases and assignment agreements relating thereto, including, without limitation, claims for overcharges relating to taxes, maintenance and other similar charges; financial reporting; environmental, and product liability matters; actions against insurance carriers relating to coverage, indemnity or

26

other matters; actions against current or former officers, directors, employees, parents, subsidiaries, Affiliates, or tax or pension or other control group members; counterclaims and defenses relating to notes or other obligations; and contract or tort claims which may exist or subsequently arise;

(b)     Avoidance Actions.  Any and all avoidance actions pursuant to any applicable section of the Bankruptcy Code, including, without limitation, Sections 544 (including, but not limited to, all Causes of Action arising under State law and maintainable under Section 544 of the Bankruptcy Code), 545, 547, 548, 549, 550, 551, 553(b) and/or 724(a) of the Bankruptcy Code, and other similar state laws such as fraudulent conveyance and preference statutes, arising from any transaction involving or concerning the Debtor; and

(c)     Any and all other Claims and Causes of Action of the Debtor.  In addition, there may be other Causes of Action which currently exist or may subsequently arise that are not set forth in the Plan or Disclosure Statement because the facts upon which such Causes of Action are based are not currently or fully known by the Debtor and, as a result, can not be raised during the pendency of the Chapter 11 Case (collectively, the "Unknown Causes of Action").  The failure to list any such Unknown Cause of Action herein or in other Plan documents is not intended to and will not limit the rights of the Reorganized Debtor to pursue any Unknown Cause of Action to the extent the facts underlying such Unknown Cause of Action subsequently become fully known to the Debtor or the Reorganized Debtor or other parties in interest.

The Plan provides that unless Causes of Action against a Person or Entity are expressly waived, relinquished, released, compromised, or settled in the Plan or by any Final Order, the Company and Post-confirmation Debtor and Estate, on behalf of themselves and holders of Allowed Claims and in accordance with Bankruptcy Code Section 1123(b)(3)(B), expressly reserve and will retain for enforcement post-Confirmation and post-consummation all Causes of Action and Unknown Causes of Action, including, without limitation, the Causes of Action described in the Plan and Disclosure Statement, as well as any other Causes of Action or Unknown Causes of Action that the Debtor or the Estate had or had the power to assert immediately before Confirmation, for adjudication or later adjudication, and, therefore, no waiver or preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches will apply to such Causes of Action upon or after the Confirmation or consummation of the Plan, solely due to such Confirmation or Consummation of the Plan.

In addition, under the Plan, the Debtor and the Estate expressly reserve and retain the right to pursue or adopt or otherwise enforce (and the right of the Reorganized Debtor to do so) any claims alleged in any lawsuit in which the Debtor is a defendant or an interested party, including, without limitation, the lawsuits described in the Disclosure Statement, against any Person, including, without limitation, the plaintiffs and co-defendants in such lawsuits.  Nothing contained in the Plan or Disclosure Statement or any related document will constitute a waiver of the rights, if any, of the Debtor or Estate or Reorganized Debtor, to a jury trial with respect to any Cause of Action or objection to any Claim or Interest.

4.      **Continued Standing by Reorganized Debtor.**

The Plan provides that, in accordance with Section 1123(b)(3) of the Bankruptcy Code, any Claims, rights, and Causes of Action that the Debtor, Reorganized Debtor, or Estate may hold or have the power to commence at any time against any Person or Entity will be preserved and retained and enforced by the Reorganized Debtor.  The Reorganized Debtor will have the right to continue or commence or otherwise enforce, as the authorized representative of the Debtor and the respective Estate and Reorganized Debtor, any and all such Claims, rights, or Causes of Action.  The Reorganized Debtor may pursue any and all such Claims, rights, or Causes of Action, as appropriate, in accordance with the best interests of the holders of Allowed Claims.  Subject to the provisions of the Plan, the Reorganized Debtor will have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such Claims, rights, and Causes of Action.

5.      **Exculpation and Limitation of Liability and Release.**

The Plan provides that the Debtor, the Reorganized Debtor, Chetan T. Patel, and each of their respective members, officers, directors, agents, attorneys, representatives, heirs, assigns, and employees (including Professionals) (collectively, the "Exculpated Persons and Releasees") shall neither have nor incur any liability to any Holder of a Claim against the Debtor or the Reorganized Debtor, to any Holder of an Interest in the Debtor or Reorganized Debtor, to any Person or Entity, or to any other party-in-interest for any act taken that, any act omitted that, or any transaction or other occurrence that is  connected to, is related to, was the cause of, is addressed in, or arose out of the Bankruptcy Case, the Plan, the formulation, negotiation, preparation, dissemination, implementation, administration, Confirmation, or consummation of the Plan or the Disclosure Statement, or any contract, instrument, guaranty, release, or other agreement or document related to, created with, or entered into in connection with the Bankruptcy Case, Claims against or Interests in the Debtor or Reorganized Debtor, or the Plan or Disclosure Statement (except for any obligations of the Exculpated Persons and Releasees explicitly provided for under the Plan). Additionally, the Exculpated Persons and Releasees shall have no liability to the Debtor, the Reorganized Debtor, the Holder of a Claim against the Debtor or Reorganized Debtor, the Holder of an Interest in the Debtor or Reorganized Debtor, some other party-in-interest in the Bankruptcy Case, or any other Person or Entity for actions taken or not taken under the Plan, in connection herewith or with respect hereto, or arising out of their administration of the Plan or the property to be distributed under the Plan, including failure to obtain Confirmation of the Plan or to satisfy any condition or conditions, or refusal to waive any condition or conditions, to the occurrence of the Effective Date, and in all respects such Exculpated Persons and Releasees shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan or with respect to the Bankruptcy Case. Provided, however, that the foregoing provisions of this paragraph shall have no effect on the liability of any Exculpated Person and Releasee that results from any such act or omission that is determined in a Final Order to have constituted fraud or other willful misconduct.

6.      **Terms Binding.**

The Plan provides that, upon the entry of the Confirmation Order, all provisions of the Plan, including all agreements, instruments and other documents filed in connection with the

Plan and executed by the Debtor or the Reorganized Debtor in connection with the Plan, will be binding upon the Debtor, the Reorganized Debtor, all Claim and Equity Interest holders, and all other Persons that are affected in any manner by the Plan.  All agreements, instruments, and other documents filed in connection with the Plan will have full force and effect, and will bind all parties thereto as of the entry of the Confirmation Order, whether or not such exhibits actually will be executed by parties other than the Debtor or the Reorganized Debtor, or will be issued, delivered or recorded on the Effective Date or thereafter.  All Pre-petition contracts, undertakings, and obligations of the Reorganized Debtor, other than to Holders of Claims in Classes that are unimpaired under this Plan, are deemed novated by the terms of this Plan.  No default shall be deemed to exist under any such novated obligations as of the Effective Date of this Plan, and notwithstanding the delay of discharge in this case, no holder of any claim may exercise any right upon default with respect to any Reorganized Debtor, the Hotel Property, or otherwise until the occurrence of a default under this Plan.

       **7.**      **Continuation of Pre-Confirmation Injunction or Stays.**

All injunctions or stays, whether by operation of law or by order of the Bankruptcy Court, provided for in the Bankruptcy Case pursuant to Sections 105, 362, and 525 of the Bankruptcy Code or otherwise that are in effect on the Confirmation Date or imposed by the Confirmation Order shall remain in full force and effect until the Final Decree.

       **H.**      **Retention of Jurisdiction.**

The Plan provides that notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date under the Plan, until such time as all payments and distributions required to be made and all other obligations required to be performed under the Plan have been made and performed by the Reorganized Debtor, the Bankruptcy Court will have and retain the maximum jurisdiction as is legally permissible , including, without limitation, jurisdiction over the Assets (including the Hotel Property and the Causes of Action), the Reorganized Debtor, and the Estate.  The Plan sets forth in more detail the jurisdiction to be retained by the Bankruptcy Court.

       **I.**      **Miscellaneous Plan Provisions.**

       **1.**      **Modifications or Amendment.**

The Plan provides that it may be modified or amended prior to Confirmation as allowed by the Bankruptcy Code or Rules.  Following Confirmation, amendments or modifications to the Plan may be made by a voting process similar to the voting process for acceptance of the Plan. These procedures are set out in detail in Article X of the Plan.

       **2.**      **Events of Default; Remedies Upon Default.**

The Plan provides that the failure of the Reorganized Debtor to make any payment due under the Plan when due, and the failure of the Reorganized Debtor to cure such monetary default within twenty-one (21) days after written notice (as provided in Section 10.10 of the

Plan) to the Reorganized Debtor of such default, shall constitute a default under the Plan. Such written notices shall be given to the Reorganized Debtor. Any "default," as defined in Section 10.2 of the Plan, shall entitle the holder of Allowed Claims affected thereby to the remedies provided under the Bankruptcy Code and under any promissory note issued pursuant to the Plan, or under any recorded deed to secure debt issued or continuing under the terms of the Plan. Any suit in law or in equity to enforce the rights and remedies under the Plan may be brought only in either the Bankruptcy Court or in any court of competent jurisdiction within the State of Georgia

### 3.    Effectuating Documents, Further Transactions and Corporate Action.

The Debtor, the Reorganized Debtor, all holders of Allowed Claims receiving distributions under the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan. Prior to, on, or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of the Equity Interest Holders or directors of the Debtor shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate) pursuant to the applicable general limited liability company or limited partnership law of Georgia without any requirement of further action by the Equity Interest Holders, the directors, or the management of the Debtor.

### 4.    Successors and Assigns.

The rights, benefits, and obligations of any Person or Entity named or referred to in the Plan will be binding on, and will inure to the benefit of, the heirs, executors, administrators, successors, and/or assigns of such Entities.

### 5.    Governing Law.

Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan and Disclosure Statement will be governed by and construed and enforced in accordance with the laws of the State of Georgia.

### 6.    Conflicts.

As provided in the Plan, to the extent any provision of the Disclosure Statement, and any documents executed in connection with the Confirmation Order (or any exhibits, schedules, appendices, supplements or amendments to the foregoing) conflicts with or is in any way inconsistent with the terms of the Plan, the terms and provisions of the Plan will govern and control.

### 7.    Severability of Plan Provisions.

The Plan provides that if any provision of the Plan is determined to be unenforceable in whole or in part, either facially or as applied, such determination shall in no way limit or affect the enforceability or operative effect of any other provision of the Plan or require the re-solicitation of any acceptance or rejection of the Plan, unless, in the absence of such provision, the Plan would fail of its essential purpose, as determined by the Bankruptcy Court. Upon such a

finding, the Debtor's period of exclusivity within which it has the exclusive right to file an amended plan shall be reinstated for a period of 60 days from the date such a finding becomes a Final Order, and the Debtor's period of exclusivity for solicitation of acceptances shall be enlarged for 105 days from the date such a finding becomes a Final Order.

## VI.   FINANCIAL INFORMATION

The Debtor has filed its Schedules with the Bankruptcy Court as required by the Bankruptcy Code. The Debtor will supplement and amend its Schedules as necessary and appropriate from time to time. The Reorganized Debtor will file post-confirmation quarterly operating reports after the Effective Date through the earlier of the entry of a Final Decree or court Order excusing further filings.

The Debtor's previous and subsequent monthly operating reports are on file with Court, and may be examined at the Clerk, United States Bankruptcy Court, Southern District of Georgia, Third Floor, 801 Gloucester Street, Brunswick, Georgia 31520 or on line through PACER©.

## VII.   ACCEPTANCE AND CONFIRMATION

At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan only if all of the requirements of Section 1129 of the Bankruptcy Code are met. Among the requirements for confirmation of a plan are that (i) the plan is accepted by all impaired classes of Claims and Interests or, if rejected by an impaired class, that the plan "does not discriminate unfairly" and is "fair and equitable" as to such class, (ii) the plan is feasible, and (iii) the plan is in the "best interests" of creditors and holders of Claims and Interests impaired under the plan.

### A.   Acceptance of the Plan.

In order for an Impaired Class of Claims or Interests to accept the Plan, (a) the holders (other than any holder designated under Section 1126(e) of the Bankruptcy Code) of at least two-thirds (2/3) in amount of the Allowed Claims or number of Interests actually voting in such Class must have voted to accept the Plan and, with respect to Claims only, (b) the holders (other than any holder designated under Section 1126(e) of the Bankruptcy Code) of more than one-half (1/2) in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

Holders of Claims in Impaired Classes are entitled to vote to accept or reject the Plan.

The Plan provides that the Plan will constitute a request that the Bankruptcy Court confirm the Plan over such rejection in accordance with Section 1129(b) of the Bankruptcy Code, the so-called "cram down" provision. Debtor reserves the right to alter, amend, modify, revoke, or withdraw the Plan or the Disclosure Statement, including any exhibit or attachment, if necessary to satisfy the requirements of Section 1129(b) of the Bankruptcy Code.

### B.   Feasibility.

As a condition to confirmation of the Plan, Section 1129(a)(11) of the Bankruptcy Code

requires that confirmation of the Plan is not likely to be followed by the liquidation of the reorganized debtor unless such liquidation is proposed in the Plan.  This requirement is addressed further in Section VIII, below.

      **C.**      **"Best Interests of Creditors" Test.**

      Confirmation of the Plan also requires that each claimant either (i) accept the Plan or (ii) under the Plan, and pursuant to Section 1129(a)(7) of the Bankruptcy Code, receive or retain property with a value, as of the Effective Date, that is not less than the value such claimant would receive or retain if Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

      Under the Plan, all Classes of Claims, except Unclassified Claims, are impaired and must vote to accept the Plan.  The payments proposed under the Plan will propose a dividend in excess of what could be expected if Debtor were "liquidated under Chapter 7."  **Exhibit C**, attached hereto, represents the Debtor's projection of its liquidation value under Chapter 7.  In order to understand the projection which follows, a short discussion of the priorities in payment of claim established by the Bankruptcy Code is in order.

      In a Chapter 7 bankruptcy case, a Chapter 7 trustee administers all assets of the Debtor.  The Chapter 7 trustee investigates each asset of the debtor to determine whether the asset has sufficient value to produce "equity" for general creditors.  "Equity" is generally defined as an asset's realizable liquidation value significantly in excess of the aggregate amount of all claims secured by that asset.  A Chapter 7 trustee's commissions, and expenses of liquidation and professional fees, further reduce the "Equity."  If a Chapter 7 trustee concludes that there is no "Equity" in any particular asset, then the asset is usually "abandoned."  If a Chapter 7 trustee concludes that an asset does have potential to produce "Equity," then the asset is liquidated, the secured liens against the asset are paid off, the trustee recovers his costs of administering and liquidating the asset, and any remaining proceeds are placed in a general fund for distribution to creditors in accordance with the priority scheme of the Bankruptcy Code.

      Therefore, under the distribution scheme of Chapter 7 of the Bankruptcy Code, secured creditors must be paid in full from the proceeds of its collateral.  Only the "Equity" portion of the collateral, if any, is available for Unsecured Creditors.

      Once a "fund" for distribution to Creditors is established, a Chapter 7 trustee must pay claims in the order of their statutory priority under Section 507 of the Bankruptcy Code.  Secured Claims and Priority Claims are entitled to payment in full before Unsecured Creditors are entitled to distribution.

      If the Case were converted to a Chapter 7, then all Chapter 11 administrative expenses would be entitled to payment ahead of unsecured claims, but after the expenses of the Chapter 7 administration and a Chapter 7 trustee's professional fees.  Chapter 11 administrative expenses will include any outstanding trade debt incurred since January 18, 2016 but unpaid as of the date of any liquidation, and unpaid Professional compensation and any administrative taxes due.

      In a Chapter 7 liquidation, all assets will be sold by a commissioned trustee, or abandoned to secured creditors.  The Debtor believes that in a Chapter 7 liquidation the trustee

would cause a "fire sale" liquidation. A Chapter 7 trustee could also abandon the estate's interest in the Debtor's Hotel Property, and allow Debtor's senior secured lender to foreclose. The Debtor projects that a Chapter 7 liquidation would result in little or no payments to other creditors, including creditors holding a general unsecured claim. Therefore, the Debtor believes that this Plan is more favorable than Chapter 7 liquidation because the Plan provides for a higher payment to creditors than they would likely receive in a liquidation.

**Chapter 7 Liquidation Analysis**

The chart attached hereto as **Exhibit C** assumes that, if the Case were converted to Chapter 7, then the Chapter 7 trustee would liquidate Debtor's properties at an auction sale. In the event the Chapter 7 trustee simply abandoned such properties to Holders of the Claims of the senior secured lender, the Debtor believes that the Chapter 7 trustee would not be able to generate sufficient recoveries to allow for meaningful distributions to holders of Unsecured Claims or to Equity Interests.

FOR THE FOREGOING REASONS, THE DEBTOR BELIEVES THAT THE PLAN IS IN THE BEST INTEREST OF EACH CLASS OF CREDITORS AND THAT EVERY IMPAIRED CLASS WILL RECEIVE DISTRIBUTIONS UNDER THE PLAN WHICH ARE GREATER THAN THE DISTRIBUTIONS SUCH CLASSES WOULD RECEIVE IN A CHAPTER 7 LIQUIDATION OF THE DEBTOR.

## VIII.   FEASIBILITY OF THE PLAN

Sandalwood's business plan and budget is attached hereto as **Exhibit D** (the "Business Plan" or "Budget"). The Budget assumes that Debtor will work out a consensual arrangement with Choice International Hotels and transition from a Comfort Inn to a lower flag in the Choice system. Revenues and Expenses have been adjusted accordingly. The Business Plan projects sufficient revenues to make payments on all Allowed Claims in each Class. Certain assumptions made in connection with Business Plan, which the Debtor suggests are conservative, are itemized on the Exhibit. Because the projections are based on averages, the actual results will probably vary from the projection, but the projection should be substantially accurate over its term. There will be no event of default under the Plan if the Reorganized Debtor fails to meet their projected revenues in a given year. In any event, the Business Plan, including the Budget, is submitted to creditors as a template of future operations of the Reorganized Debtor to demonstrate feasibility of this Plan and is aspirational in nature. Strict compliance with the Budget shall not be construed as a contractual obligation to creditors under the Plan.

The Debtor believes the Plan is fair and equitable, and provides the best potential for payment of the claims of creditors.

## IX.   CERTAIN TAX CONSEQUENCES

The confirmation and execution of the Plan may have tax consequences to holders of Claims and Interests, as well as to the Company.

33

## A.     In General.

The federal income tax consequences of the implementation of the Plan to a Creditor will depend in part on (a) whether the Creditor's Claim constitutes a security for federal income tax purposes, (b) whether the Creditor reports income on the accrual basis, (c) whether the Creditor receives consideration in more than one (1) tax year, and (d) whether all the consideration received by the Creditor is deemed to be received by that Creditor as part of an integrated transaction.  The federal tax consequences upon the receipt of cash and notes allocable to interest are discussed in "Receipt of Interest" below.

## B.     Gain or Loss on Exchange.

While the Debtor does not believe that any of its trade creditor's claims will constitute tax securities, certain of its long-term obligations could be classified as tax securities.  Whether a debt instrument constitutes a security is based on the facts and circumstances surrounding the origin and nature of the debt and its maturity date.  Generally, claims arising out of the extension of trade credit have been held not to be securities.  Instruments with a five-year term or less rarely constitute securities.  Accordingly, a Creditor will recognize gain or loss on the exchange of his existing Claim (other than a Claim for accrued interest) for any consideration.  The amount of such gain or loss will equal the difference between (a) the "amount realized" in respect of such Claim and (b) the adjusted tax basis of the Creditor in such Claim.  Pursuant to Section 1001 of the Internal Revenue Code, the "amount realized" will be equal to the sum of the cash plus the fair market value of any other property received in such exchange.

(a)     Receipt of Cash.

A Creditor who received cash in full satisfaction of his claim will be required to recognize gain or loss on the exchange.  The Creditor will recognize gain or loss equal to the difference between the "amount realized" in respect of such Claim and the adjusted tax basis of the Creditor in the Claim, and the tax treatment of the exchange will parallel the tax treatment set forth under "Gain or Loss on Exchange" above.

(b)     Determination of Character of Gain or Loss.

In the case of a Creditor whose existing Claim does not constitute a capital asset, the gain or loss realized on the exchange will give rise to ordinary income or loss.  In the case of a Creditor whose existing Claim does constitute a capital asset in his hands, the gain or loss required to be recognized will generally be classified as a capital gain or loss, except to the extent of interest.  Any capital gain or loss recognized by a Creditor will be long-term capital gain or loss with respect to those Claims for which the holding period of the Creditor is more than twelve (12) months, and short-term capital gain or loss with respect to such Claims for which the holding period of the Creditor is twelve (12) months or less.

(c)     Receipt of Interest.

The Bankruptcy Tax Act of 1980 reversed prior law by providing that consideration attributable to accrued but unpaid interest will be treated as ordinary income, regardless of whether the Creditor's existing Claims are capital assets in his hands and the exchange is pursuant to tax reorganization.  A Creditor who, under his accounting method, was not previously required to include income accrued, but unpaid interest attributable to his existing Claims, and who exchanges his interest Claim for Cash, other property or Stock, or a

34

combination thereof, pursuant to the Plan will be treated as receiving ordinary interest income to the extent of any consideration so received allocable to such interest, regardless of whether that Creditor realizes an overall gain or loss as a result of the exchange of his Claims.

(d)     Backup Withholding.

Under the Internal Revenue Code, interest, dividends, and other "reportable payments" may, under certain circumstances, be subject to "backup withholding" at a thirty-one percent (31%) rate.  Withholding generally applies if the holder:  (i) fails to furnish his social security number or other taxpayer identification number ("TIN"), (ii) furnishes an incorrect TIN, (iii) fails to report interest or dividends, or (iv) under certain circumstances fails to provide a certified statement, signed under penalty of perjury, that the TIN provided is his correct number and that he is not subject to backup withholding.

(e)     Tax Consequences to Interest Holders.

With respect to the Debtor and the Equity Interest Holders, the tax considerations of confirmation of the plan are potentially more complex.  The Debtor is a limited liability company and is therefore not a tax-paying unit.  Rather, the Debtor is "flow-through" entity and the tax consequences of its operations and disposition of assets are determined at the Member or Partner level.  The Plan poses potential tax issues concerning allocation of capital gains and losses as well as net operating losses among the Equity Interest Holders, and create the potential for recognition of cancellation of debt ("COD") income by the Equity Interest Holders.

(f)     Cancellation of Debt ("COD") Income

Cancellation of debt income (or COD income) arises when a debtor does not repay the full amount of a debt.  The general rule is that the amount of COD income equals the excess of the face amount of the debt over the amount paid to discharge it.

IRC section 108(a)(1)(A) provides that there is excluded from gross income of a taxpayer the amount realized from COD income if the discharge occurs in a Title 11 case.  This exception has limited utility in the context of partnerships and partners because, pursuant to IRC Section 108(d)(6), the bankruptcy exception applies at the partner level.  Accordingly, for the bankruptcy exception to apply to a partner's share of COD income from a partnership, the discharge of partnership liabilities must occur in a Title 11 case and the partner must also be a debtor in a Title 11 case.  As such, COD income in a partnership environment has the potential to trigger significant taxable income inclusion implications to the partners of the enterprise that would not exist in a corporate structure.

The projected debt forgiveness from a "sale" of the assets of the Debtor may not be material, and any such sale is not projected to produce any COD income because all debts are projected to be paid in full.

BECAUSE THE FINAL OUTCOME DEPENDS SO MUCH ON EACH INDIVIDUAL CREDITOR'S OR INTEREST HOLDER'S SITUATION, IT IS IMPERATIVE THAT EACH CREDITOR OR INTEREST HOLDER SEEK INDIVIDUAL TAX COUNSEL FOR ADVICE ON ITS PARTICULAR SITUATION.

ALL HOLDERS OF CLAIMS AND INTERESTS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS WITH RESPECT TO ANY FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN.  THIS DISCLOSURE STATEMENT IS NOT INTENDED, AND SHOULD NOT BE CONSTRUED, AS LEGAL OR TAX ADVICE TO ANY CREDITOR OR INTEREST HOLDER.

## X.   ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

If the Plan is not confirmed and consummated, then the alternatives include (a) liquidation of the Debtor under Chapter 7 of the Bankruptcy Code or (b) an alternative plan of reorganization.  The Debtor believes that if the Plan is not confirmed, then holders of Allowed Claims will receive a smaller dividend than proposed under the Plan.

### A.   Liquidation Under Chapter 7.

If no plan can be confirmed, then Sandalwood's Chapter 11 Case may be converted to a case under Chapter 7 of the Bankruptcy Code.  A Chapter 7 trustee would be appointed to liquidate the remaining assets of the Debtor for distribution to its creditors in accordance with the priorities established by the Bankruptcy Code.  A Chapter 7 trustee would need time to investigate the Debtor's pre-petition transactions, and its assets and liabilities.  A Chapter 7 trustee would retain and liquidate the Debtor's remaining assets, and, if necessary, investigate and pursue Causes of Action.  The liquidation of the Debtor's Assets would result in distressed recoveries and would therefore reduce significantly the recovery to Unsecured Creditors.  The Debtor also believes that the conversion of the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code and the appointment of a Chapter 7 trustee would increase the costs of administration, and reduce and postpone any distribution to holders of Allowed Claims.

For all of the foregoing reasons, the Debtor has concluded that Creditors are likely to receive an amount under the Plan that is substantially greater than the amount such Creditors would receive under a Chapter 7 liquidation.

### B.   Alternative Plan of Reorganization.

If the Plan is not confirmed, then the Debtor or any other party-in-interest could attempt to formulate a different plan.  The Debtor believes that the Plan described herein enables the Creditors and all parties-in-interest to realize the best payout under the circumstances.

## XI.   SOLICITATION

The Disclosure Statement you are reading is submitted by the Debtor in compliance with its obligations under the Bankruptcy Code to provide "adequate information" to enable you to reach an informed decision regarding whether it is in your best interest to vote to accept the Debtor's Plan.  All Claims are to receive the maximum distribution possible under the circumstances at a much earlier date than distributions would be paid if the Case were converted to a Chapter 7 case.

Sandalwood urges all holders of claims and interests to carefully consider the Plan of

Reorganization and complete the attached Ballot accepting the Plan.

Sandalwood and its management thank you, in advance, for your support.

IN WITNESS WHEREOF, the undersigned have caused this Disclosure Statement to be duly executed as of the date written below, which execution may be in multiple identical counterparts.

This 18$^{h}$ day of April, 2016.

[signature page to follow]

G:\CLIENTS\Sandalwood Hospitality, LLC\Plan\Disclosure Statement for Plan of Reorganization - Sandalwood Hospitality, LLC (for upload 04.18.16).doc

SANDALWOOD HOSPITALITY, LLC

By: */s/ Chetan T. Patel*
    Chetan T. Patel, its Manager

STONE & BAXTER, LLP

By:   */s/ David L. Bury, Jr.*

     */s/ G. Daniel Taylor*

    David L. Bury, Jr.
    Georgia Bar No. 133066
    dbury@stoneandbaxter.com
    G. Daniel Taylor
    Georgia Bar No. 528521
    dtaylor@stoneandbaxter.com
    Fickling & Co. Building
    Suite 800
    577 Mulberry Street
    Macon, Georgia 31201
    (478) 750-9898;
    (478) 750-9899 (*fax*)
    Counsel for Sandalwood Hospitality, LLC

## EXHIBIT A

**PLAN OF REORGANIZATION OF SANDALWOOD HOSPITALITY, LLC**
(to be attached after filing)

## **EXHIBIT B**

**CURE COSTS**

Debtor is not aware of any Cure Costs

## **EXHIBIT C**

## **LIQUIDATION ANALYSIS**

(attached separately)

## **EXHIBIT D**

### **BUDGET**

(attached separately)